Sanjay Wadhwa
Charles D. Riely
Dominick D. Barbieri
New York Regional Office
SECURITIES AND EXCHANGE COMMISSION
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0124 (Barbieri)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | 14-CV-8181 (RJS) |
| -against- | ECF CASE |
| ZACHARY ZWERKO, and DAVID L. POST, | AMENDED COMPLAINT |
| Defendants. | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendants Zachary Zwerko ("Zwerko") and David L. Post ("Post," and together with Zwerko, "Defendants"), alleges as follows:

## SUMMARY

1. This case involves an insider trading scheme carried out by Zwerko and Post. Zwerko had access to confidential acquisition planning information of a major pharmaceutical company ("Pharma Company") through his employment as a financial analyst at Pharma Company. Zwerko misappropriated this information and repeatedly tipped Post, a friend and former business school classmate, who used this information to

make profitable trades in advance of at least two acquisitions. The Defendants agreed to split the profits from the illicit trading.

2. Through his work, Zwerko obtained confidential information concerning the (i) nonpublic negotiations between Pharma Company and Idenix Pharmaceuticals, Inc. ("Idenix") that resulted in a June 9, 2014 pre-market open announcement that Pharma Company had agreed to acquire Idenix for $24.50 per share (the "Idenix Announcement"); and (ii) nonpublic negotiations between Ardea Biosciences, Inc. ("Ardea") and several pharmaceutical companies, including Pharma Company, participating in a competitive bidding process that resulted in an April 23, 2012 pre-market open announcement that AstraZeneca PLC ("AstraZeneca") had agreed to acquire Ardea for $32 per share in cash (the "Ardea Announcement").

3. In both instances, Zwerko misappropriated the material nonpublic information he obtained from Pharma Company in breach of the duty of confidentiality he owed it and tipped Post. After receiving this information, Post traded prior to the public announcements of the acquisitions and made over $683,000 of illicit profits.

4. In order to camouflage their scheme from law enforcement, the Defendants relied on cash payments and took steps to disguise their communications. As partial payment for tips to Post, Zwerko picked up two cash payments totaling $57,000 from Post's home. The first cash payment was made at Post's Halloween party in 2012. At that party, Post gave Zwerko $7,000 in cash. The second payment came shortly after Post made profitable trades in Idenix. In a meeting at Post's new house, Post handed Zwerko a shoebox containing twenty-five bank envelopes, each holding $2,000 in fifty dollar and hundred dollar bills, for a payment of $50,000. Zwerko and Post also used

prepaid "burner" cell phones, and coded messages conveyed both via draft emails located in a dummy email account and via text messages to communicate with one another.

5. In carrying out the insider trading scheme, Zwerko knowingly or recklessly disclosed material nonpublic information to Post for use in trading activities. Post, for his part, knew, recklessly disregarded, or had reason to know that Zwerko was breaching his obligations to maintain the confidentiality of that information by disclosing it to Post, and, further, Post knowingly or reckless traded on the basis of the material nonpublic information that Zwerko tipped him.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

6. The Commission brings this action pursuant to the authority conferred upon it by Section 21(d) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78u(d)]. The Commission seeks a permanent injunction against Zwerko and Post, enjoining them from engaging in the transactions, acts, practices, and courses of business alleged in this Complaint, and disgorgement of all profits realized or other ill-gotten gains from the unlawful insider trading activity set forth in this Complaint, together with prejudgment interest on a joint and several basis. The Commission also seeks civil penalties against Zwerko and Post pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]. Finally, the Commission seeks any other relief the Court may deem appropriate pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)].

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78u-1 and 78aa].

8.      Venue lies in this Court pursuant to Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1 and 78aa].  Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the Southern District of New York and elsewhere and were effected, directly or indirectly, by making use of the means or instrumentalities of transportation or communication in interstate commerce, or of the mails, or the facilities of a national securities exchange. During the time of the conduct at issue, shares of Idenix and Ardea were traded on the Nasdaq market, an electronic stock market located in the Southern District of New York. In addition, many of the communications in furtherance of the insider trading alleged in this Complaint were made from, to, or within the Southern District of New York, and Post placed some illegal trades from his office in the Southern District of New York.

## THE DEFENDANTS

9.      **Zwerko**, age 32, is a resident of Cambridge, Massachusetts.  Zwerko was employed as a senior financial analyst at Pharma Company until July 2014 when he left Pharma Company for a business development position with another company.

10.     **Post**, age 42, is a resident of Livingston, New Jersey.  During the period relevant to this complaint, Post was employed by a full-service financial services banking firm located in New York, New York.

## RELEVANT ENTITIES

11.     **Idenix** is headquartered in Cambridge, Massachusetts and was recently acquired by Pharma Company.  Until Pharma Company acquired Idenix, Idenix's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and was listed on the NASDAQ stock market under the symbol "IDIX."

12.     **Ardea** is a wholly-owned subsidiary of AstraZeneca, and is headquartered in San Diego, California. Until AstraZeneca acquired Ardea, Ardea's common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and was listed on the NASDAQ stock market under the symbol "RDEA."

## FACTS

### A.    Zwerko's Friendship with Post and Their Efforts to Conceal Their Communications

13.     Zwerko and Post first met in approximately 2008 when they were business school classmates. Following business school, the two maintained a social relationship. For example, Zwerko attended at least one of Post's annual Halloween parties, and they have gone skiing together. As recently as July 2014, Zwerko visited Post's new home in New Jersey.

14.     After determining to carry out the insider trading scheme, Zwerko and Post took a number of steps to hide the illicit nature of their arrangement to trade on Pharma Company's confidential information. The Defendants used burner cell phones and a dummy email account to mask their communications. When one wanted to convey information to the other via the dummy email account, he would draft an email in code and leave it in the draft folder, and the other would read it and then delete the message. The Defendants also exchanged coded text messages.

15.     Zwerko also received a personal benefit for tipping Post. Post and Zwerko agreed to split the profits from the illicit trading. As noted above and detailed below, after making profitable trades in Idenix and Ardea, Post paid cash to Zwerko in partial payment for the tips.

5

## B. Zwerko's Access to Pharma Company's Confidential Information and His Obligation to Maintain Confidentiality

16. Zwerko had access to material nonpublic information as a regular part of his role at Pharma Company. As a senior financial analyst with Pharma Company's Financial Evaluation and Analysis group (" Pharma Company Finance"), Zwerko was responsible for conducting analysis in support of business combination and divestiture opportunities.

17. In that capacity, Zwerko had access to a shared drive that contained project folders concerning potential transactions. Each folder represented a separate project that Pharma Company Finance was considering in support of Pharma Company's business development, including potential acquisitions and joint ventures. Zwerko was responsible both for conducting preliminary due diligence (which involved primarily a review of public information) and advanced due diligence (which involved, among other things, financial modelling after a confidentiality agreement had been signed and access granted to a target's internal documents).

18. Pharma Company considered information relating to its potential business combinations highly confidential, and put in place policies designed to protect this information. Among other things, Pharma Company created project names to protect the confidentiality of the transaction. For example, Pharma Company referred to its impending acquisition of Idenix as "Project Invincible."

19. Under Pharma Company's policies and his employment contract, Zwerko was obligated to maintain the confidentiality of Pharma Company's business information and was forbidden to pass that information on to those without a business need to know. These policies specifically prohibited Zwerko from disclosing material nonpublic

6

information concerning Pharma Company or its acquisition planning.

20. As detailed below, despite his owing a duty of confidentiality to Pharma Company, Zwerko tipped Post in advance of at least two acquisitions.

## C. Zwerko's Illegal Tips to Post and Post's Illicit Trading Ahead of the Idenix Announcement and $50,000 Cash Kickback to Zwerko

21. Post traded in advance of the Monday, June 9, 2014, pre-market open announcement that Pharma Company had agreed to acquire Idenix for $24.50 per share. He traded these securities on the basis of confidential information tipped to him by Zwerko in breach of Zwerko's obligations to Pharma Company.

22. From at least April 2014, Pharma Company and Idenix undertook nonpublic, confidential discussions relating to a potential business combination. On May 13, 2014, the two companies executed a confidentiality agreement and a standstill agreement.[1] From April 1, 2014 until the Idenix Announcement, Idenix traded at a price range between $5.05 and $7.23 per share. After the Idenix Announcement, Idenix's stock rose from $7.23 (the closing price on Friday, June 6) to $23.79 (the closing price on June 9), an increase of over 238 percent.

23. Zwerko accessed confidential information relating to Pharma Company's merger negotiations with Idenix. Although Zwerko did not perform work for Pharma Company related to Idenix and was not assigned to Pharma Company's deal team, Zwerko received an email from his supervisor that referenced the impending acquisition and also accessed computer files, including detailed presentations, relating to the details

---

[1] A standstill agreement typically requires a suitor company to refrain from increasing its position in a potential target in return for a promise by the target to buy back the suitor's shares at a premium.

7

of the acquisition and/or confidential information supplied by Idenix to Pharma Company.

24.  By at least May 5, 2014, Zwerko began accessing confidential information relating to Pharma Company's potential business combination with Idenix and/or confidential information supplied by Idenix to Pharma Company. On May 5, 2014, at 1:51 p.m. and 1:52 p.m., Zwerko accessed confidential presentations that related to Idenix's business that Idenix had provided as part of nonpublic negotiations with Pharma Company.

25.  Both of the documents Zwerko accessed were stored in a Pharma Company Finance shared drive that contained Pharma Company's confidential list of potential business combinations and divestitures. The files Zwerko accessed came from one folder within the shared drive relating to the nonpublic negotiations with Idenix, titled "Invincible".

26.  Zwerko, who had accessed files that referenced a potential business combination between Pharma Company and Idenix from the Project Invincible folder, knew, or was reckless in not knowing, that "Invincible" was the code name assigned to possible business combinations with Idenix.

27.  A few weeks later, on May 20, 2014, at 4:08 p.m., Zwerko's supervisor forwarded to Zwerko and others an email that included confidential and nonpublic information concerning Idenix. Although the forwarded email focused on the discount rates to be used for financial modelling, the email chain included several emails relating to Project Invincible.

28.  One email chain included a reference to the fact that Pharma Company

had made a nonbinding offer for Invincible eleven days earlier on May 9. Other emails in the chain indicated that Pharma Company was in the process of executing advanced due diligence and financial modelling on Project Invincible.

29.   Minutes after receiving the May 20th email from his supervisor relating to Project Invincible, at 4:17 p.m., Zwerko accessed Yahoo Finance's summary page for Idenix from his work computer. Later, at 4:28 p.m., he accessed headlines relating to Idenix on Yahoo Finance. These site visits were the first time that Zwerko had accessed internet information relating to Idenix from his work computer since at least January 2012.

30.   Later on the evening of May 20, at 8:11 p.m., 8:30 p.m., and 8:31 p.m., Zwerko accessed three separate files from Pharma Company's Project Invincible folder relating to an analysis of Idenix and/or Idenix's confidential information.

31.   Zwerko had timely communications with Post after accessing Pharma Company's confidential information relating to its planned acquisition of Idenix. On the evening of May 20, 2014, after receiving the email from his supervisor that referenced the offer to Idenix, Zwerko sent a text to Post at 5:38 p.m. Later that evening, at 8:44 p.m., minutes after accessing confidential files relating to Idenix, Zwerko placed a call to Post, which lasted approximately 12 minutes.

32.   Just two minutes after Post's call with Zwerko ended on May 20, at 8:58 p.m., Post placed an order to buy 1,000 shares of Idenix at a limit order of $5 from his home in New Jersey.

33.   Although that limit order was not executed, Post purchased a substantial position in Idenix over the next several days. Specifically, between May 21, 2014, and

9

June 6, 2014, Post purchased 33,000 shares at prices between approximately $6.25-7.25 per share. In total, Post spent over $219,000 on Idenix securities. Some of Post's purchases were on margin. Post's Idenix position was the second largest in his portfolio, after his position in Ardea.

34. Post continued to trade after timely communications with Zwerko. For example, on May 21, 2014, Zwerko accessed a confidential file that contained detailed information about Pharma Company's intent to submit a revised acquisition offer and indicated that the acquisition would be reviewed by Pharma Company's board on May 27, 2014. Subsequently, Zwerko attempted to delete this file from his computer. In addition, on June 3, 2014, at 12:57 p.m., Zwerko accessed a file that referenced the first name of Pharma Company's CEO. That day, a group of Pharma Company employees met with Pharma Company's CEO to update him on the status of negotiations with Idenix and to discuss a revised bid to acquire Idenix.

35. A few hours after accessing the file containing an apparent update to Pharma Company's CEO, at 5:31 p.m. on June 3, Zwerko called Post, and the call lasted three minutes. Post then made additional purchases on June 4, June 5, and June 6.

36. After the Idenix Announcement, Post sold his Idenix securities for a profit of approximately $579,000.

37. Post's trades in Idenix were unusual for several reasons: (i) he had not purchased Idenix securities before May 21, 2014; (ii) a portion of Post's holdings was acquired on margin, and these were the first margin purchases made by Post since at least October 2013; and (iii) the substantial amount of money (over $219,000) that Post spent buying Idenix securities was the most he had invested in a single security since his 2012

10

purchases of Ardea stock (discussed below).

38. In July 2014, Zwerko received a $50,000 cash kickback from Post as partial payment for Zwerko's Idenix-related tips. During a visit to Post's new home in New Jersey, Zwerko was handed a shoebox by Post containing twenty-five bank envelopes, each holding $2,000 of cash in fifty- and hundred-dollar denominations. Zwerko took the money as partial payment of his share of Post's trading profits in Idenix.

### D. Zwerko's Illegal Tips to Post and Post's Illicit Trading Ahead of the Ardea Announcement and $7,000 Cash Kickback to Zwerko

39. Post also traded in advance of the Monday, April 23, 2012, pre-market open announcement that Ardea had agreed to be acquired by AstraZeneca for $32 per share in cash. In the months preceding the Ardea Announcement, Ardea had engaged in a series of confidential discussions with several companies, including Pharma Company, concerning possible acquisitions. During these nonpublic negotiations, Ardea traded at a price between $19.65 and $22.94. After the Ardea Announcement, Ardea's shares rose from $20.84 (the close on Friday, April 20) to $31.62 (the close on Monday, April 23), an increase of over 51 percent.

40. Zwerko obtained material nonpublic information concerning Pharma Company's confidential, nonpublic merger discussions because he helped Pharma Company evaluate making its own bid to acquire Ardea. On February 17, 2012, Ardea's banker sought indications of interest from twelve companies that had previously signed confidentiality agreements, including Pharma Company. Pharma Company then engaged in confidential negotiations with Ardea. Through his role at Pharma Company Finance, Zwerko performed work relating to these nonpublic negotiations.

41. Zwerko was involved in Pharma Company's planning and/or acquisition

analysis relating to Ardea and had access to confidential and nonpublic information about Pharma Company's M&A objectives and planned offers concerning Ardea, which was known internally as Project Quartz. For example, on February 12, 2012, Zwerko attended a Pharma Company Finance meeting to discuss the term sheet and deal structure for Quartz. And, on February 27, 2012, at 2:30 p.m., Zwerko attended a meeting scheduled for half an hour under the subject of "Team request to proceed to non-binding bid on Quartz." Zwerko conducted financial analysis in support of Pharma Company's bid and accessed confidential documents provided by Ardea to Pharma Company in connection with merger discussions.

42. Although Pharma Company did not ultimately acquire Ardea, it participated in the negotiations until at least a week before the Ardea Announcement and made a nonpublic offer to acquire Ardea for $30.25 per share on April 17, 2012.

43. Zwerko had timely communications with Post after accessing Pharma Company's confidential information concerning its acquisition planning relating to Ardea. On Friday, February 24, 2012, while Zwerko was performing work in connection with Ardea, Zwerko and Post exchanged two calls that lasted a total of 18 minutes. On Monday, February 27, 2012, at 4:08 p.m., just hours after attending the internal meeting relating to Pharma Company's intent to make a non-binding offer to Ardea, Zwerko placed a call to Post's cell phone, which lasted for six minutes. Starting the next day, February 28, 2012, Post began purchasing Ardea securities. Between February 28, 2012 and April 18, 2012, Post purchased a total of 9,800 shares of Ardea through three brokerage accounts. In total, Post purchased over $227,000 worth of Ardea securities.

44. After the Ardea Announcement, Post sold all his shares and reaped profits

of approximately $105,000. Post's purchases in Ardea were unusual in that he had not previously purchased Ardea's securities and executed his first purchase the day after Zwerko attended a Pharma Company meeting requesting permission to bid on Ardea, following which Zwerko called Post. Moreover, the over $227,000 that Post spent on acquiring Ardea securities was the most that Post had ever invested in a single issuer. Finally, a portion of Post's positions was acquired on margin.

45. In October 2012, Zwerko received a $7,000 cash kickback from Post as partial payment for Zwerko's Ardea-related tips. At Post's annual Halloween party that year, which Zwerko attended, Post gave Zwerko $7,000 in cash. Zwerko took the cash as partial payment of his share of Post's trading profits in Ardea.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### (Against Both Defendants)

46. The Commission realleges and incorporates by reference paragraphs 1 through 45, as though fully set forth herein.

47. The information that Zwerko obtained concerning Pharma Company's acquisition interest in, and analysis of, Idenix and Ardea was material and nonpublic.

48. Pharma Company treated the information as confidential, including through policies and procedures designed to protect such information and to prohibit its employees from tipping such information.

49. Zwerko knew or recklessly disregarded that the information was material and nonpublic.

50. Zwerko knew or recklessly disregarded that he owed a fiduciary duty, or an obligation arising from a similar relationship of trust and confidence, to Pharma

Company, and/or its shareholders to keep the information confidential.

51. Yet Zwerko tipped his friend Post to trade in the securities of Idenix and Ardea, on the basis of the material nonpublic information Zwerko obtained and/or misappropriated from Pharma Company. He did so for a personal benefit, including the shoebox full of cash that he received from Post in July 2014 and the cash he received from Post at Post's 2012 Halloween party. By doing so, Zwerko breached his fiduciary duty, or other obligation arising from a similar relationship of trust and confidence, to Pharma Company and/or its shareholders.

52. Post knew, recklessly disregarded, or should have known that the material nonpublic information was disclosed by Zwerko in breach of a fiduciary duty, or an obligation arising from a similar relationship of trust and confidence.

53. Post knowingly or recklessly traded on the basis of the material nonpublic information that Zwerko tipped him by purchasing Idenix and Ardea's securities.

54. By virtue of the foregoing, Zwerko and Post, in connection with the purchase or sale of securities, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, directly or indirectly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon persons.

55. By reason of the conduct described in this Complaint, Zwerko and Post, directly or indirectly, violated, and, unless enjoined, will again violate, Section 10(b) of


the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## RELIEF SOUGHT

**WHEREFORE**, the Commission respectfully requests that this Court enter a Final Judgment:

### I.

Permanently restraining and enjoining defendants Zwerko and Post, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with either of them who receive actual notice of the injunction by personal service or otherwise, and each of them, from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

### II.

Ordering defendants Zwerko and Post to disgorge, with prejudgment interest, all illicit trading profits, or other ill-gotten gains received as a result of the conduct alleged in this Complaint on a joint and several basis;

### III.

Ordering defendants Zwerko and Post to pay civil monetary penalties pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

## IV.

Granting such other and further relief as this Court may deem just and proper.

Dated:  New York, New York
        October 24, 2014

*Sanjay Wadhwa*
Sanjay Wadhwa
Charles D. Riely
Dominick D. Barbieri
New York Regional Office
SECURITIES AND EXCHANGE
COMMISSION
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0124 (Barbieri)
Attorneys for Plaintiff